Wilma Doris **FOSTER**, individually and Wilma Doris Foster, Executrix of the Estate of Harry C. Winn, deceased, Plaintiff in Error,

v.

Juanita Odie **BARTON** and Bertie Mae Barton, Defendants in Error.

No. 39129.

Supreme Court of Oklahoma.

Sept. 26, 1961.

Reynolds & Foreman, Norman, for plaintiff in error.

Porta & Weaver, El Reno, Mather M. Eakes, Oklahoma City, for defendants in error.

HALLEY, Justice.

Parties will be referred to as they appeared in the District Court.

Harry C. Winn and Mildred Grace Winn were husband and wife. Prior to her marriage Mildred Grace Winn had been married and divorced from another man by whom she had two daughters who are the plaintiffs in this case. By Winn she had one daughter who was the defendant in this action. Soon after their mother married Winn the plaintiffs moved into the home of their mother and stepfather and continued to live with them until they were married and established homes of their own. They married brothers by the name of Barton.

Mildred Grace Winn died on April 28, 1951, intestate and no administration was had of her estate, if any there was. On May 4, 1951, Harry C. Winn executed a will in which he devised his property to the plaintiffs and the defendant, one-third each.

On July 6, 1956, Harry C. Winn made a new will in which he revoked all previous wills and gave all his estate to the defendant who was his only child.

On December 27, 1957, an order was made allowing final account of executrix and determining heirs and final decree of distribution and discharge. The entire estate of Harry C. Winn was given to the defendant.

The plaintiffs brought this action asking judgment for a one-third interest each in all the real and personal property of Harry C. Winn after the deduction of all expenses of administration of his estate.

It is the plaintiffs' position that their mother and their stepfather entered into an oral agreement a short time before their mother's death wherein it was agreed that they would provide by will that their property should be divided equally between the three daughters and that the stepfather carried this out by the execution of the will of May 4, 1951, and that because of this agreement the stepfather could not eliminate them from taking their share by the signing of a new will. The trial judge agreed with their views and entered judgment for them.

The defendant makes three contentions as follows:

"1. The evidence relied upon to establish the alleged oral agreement was not sufficient to support the trial court's finding and judgment.

"2. If any oral agreement to make a will existed, such agreement was void for lack of consideration.

"3. An alleged oral agreement to devise property being within the Statute of Frauds, a subsequent will is not such a memorandum as will take the oral agreement out of operation of the statute."

The plaintiffs take issue with each of these propositions.

We agree with the defendant on each of her grounds for reversal. In the first place we say that the evidence showed that there was no contract to make a will. The strongest evidence for the plaintiffs was that of the lawyer who drew the first will. He had been called to the home of the stepfather in regard to preparing a will. This lawyer quoted the stepfather as follows:

"During the conversation—Mrs. Winn had just recently died—and Mr. Winn said, in substance, 'prior to my wife's death she and I had agreed that we would each make a Will devising to her two children—and to our daughter—in equal shares—the property we have, which consists of this home and the furniture—what we have.'

"* * * And, 'now I want that home taken care of in the Will and I want the property to go just as she and I had agreed.' He said, 'In equal shares.'"

Another witness, Herman V. Barton, the husband of one of the plaintiffs, testified in answer to certain questions as follows:

"Q. And what was that conversation? A. He asked me if I knew someone who could come out and make a Will; and that he and Grace talked it over and decided to divide their prop-

erty equally; and now that since she passed on he was going to fulfill their agreement. And asked me to bring some one out. * * *

\* \* \* \* \* \*

"Q. Tell the court what it was took place? A. Well—Mr. Winn said, 'Well, Mr. Hall, I brought you out here—my wife and I talked the situation over and decided to divide everything equally among these three girls and this is the last thing I can do for them and I am going to do what we agreed on.'

"Q. Did he state that they had made that agreement? A. That is correct. He did."

One of the plaintiffs in answer to a question said, "Yes, sir. And they made an agreement to make a will—all three of us girls equal shares."

■ The foregoing by no stretch of the imagination could constitute an oral contract to make a will. We said in Pancoast et al. v. Eldridge, 134 Okl. 247, 273 P. 255, 256:

"Before a court of equity will specifically enforce an oral contract to devise property, the proof of the contract must be so cogent, clear, and forcible as to leave no reasonable doubt as to its terms and character."

■ We say there is nothing in the terms of the agreement between the husband and wife in the instant case that would show that the first will was irrevocable and not subject to change. We are of the opinion that the husband agreed to follow his wife's wishes soon after her death but he in no way bound himself that he would not change his will. We cannot be concerned with what his motives were. That it was his property is unchallenged.

■ The defendant's second proposition "that there was no consideration for this alleged oral contract" must be sustained. It is fundamental that contracts for testamentary or similar disposition of property must, like other contracts, be supported by a sufficient valid consideration. 94 C.J.S. Wills § 113(1).

■ No valid consideration moving from the mother to the stepfather has been shown in this case. The real estate involved was their homestead jointly accumulated. There is no consideration shown that moved from the stepdaughters to the stepfather which would guarantee that he would leave to them two-thirds of his estate. We said in Louthan et al. v. Johnson et al., 111 Okl. 170, 239 P. 173, that contracts either oral or in writing are not enforceable without a consideration.

The plaintiffs rely on Tucker v. Zachary, Okl., 269 P.2d 773, but that is readily distinguishable from the case at bar since it was a suit on contract and not on a will. The foster father there did sign an instrument which was his wife's holographic will. The husband there survived the wife by fifty-five minutes. It was her will but his written contract. The court found mutual promises there but here there was no evidence of a mutual promise in our case. If anything, it was more the wife telling the husband to do something which he did but was not bound to do.

■ The defendant's third ground for reversal carries merit. Here was an alleged agreement having to do with real estate which was not in writing. It clearly violates our Statute of Frauds. 15 O.S. 1951 § 136, subsection 5, which is:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent: * * *

"5. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."

■ In Chambers et al. v. Savage, 185 Okl. 251, 91 P.2d 88, we held that an oral

family settlement of a will contest, and an agreement providing for the division of an estate consisting of real and personal property, was within the statute of frauds and unenforceable. We think there is greater reason to say that an oral agreement to make a will is more objectionable as violative of the statute of frauds than an oral agreement to settle a will contest. There is much greater opportunity for overreaching in a situation involving an oral agreement to make a will than in one to settle a will contest.

We said in the aforementioned case that the word "sale" was broad enough to cover any agreement by which the passing of any interest in real estate is to be accomplished.

Since there was both real estate and personal property in the estate of Harry C. Winn, the stepfather, we are confronted with the question of whether the agreement would be good as to the personal estate. We wish to quote from Sparks on Contracts to Make Wills, at page 42:

> "Contracts for the making of wills are often contracts for entire estates rather than contracts for any specific real estate or specific personalty. From what has already been said it will be observed that in many instances these contracts will be within the Statute of Frauds if real estate is involved but not affected by the Statute if the estate is made up entirely of personal property. If the estate consists partly of personalty and partly of realty a further complication arises. Since the contract is for all the property the promisor might own at the time of his death the consideration rendered by the promisee is ordinarily as applicable to one type of property as it is to the other. Therefore, the contract is indivisible and if the Statute of Frauds prevents its enforcement as to the real estate it will be unenforceable as to the whole. * * "

See also Lemire v. Haley, 91 N.H. 357, 19 A.2d 436 and Kessler v. Olen, 228 Wis. 662, 280 N.W. 352, 281 N.W. 691. The foregoing rule is sound and we adopt it.

We think that this case at bar is stronger for the position of the defendant than was Paull et al. v. Earlywine, 195 Okl. 486, 159 P.2d 556, where there were mutual wills. We said in that case that:

> "Any person executing a conjoint or mutual will with another does so with notice given by 84 O.S.1941 § 52, that such will may be revoked by any of the testators in like manner with any other will."

The purported agreement between the mother and stepfather here contemplated a conjoint or mutual will.

The first will of Harry C. Winn was revocable and ambulatory. The judgment of the trial court is reversed with instructions to the trial court to enter judgment for the defendant.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH and JOHNSON, JJ., concur.

DAVISON and JACKSON, JJ., concur in result.