Albertha Rudy McKEE, Agnes Rudy and John Wesley Rudy, Appellants,

v.

Evelyn HASSEBROEK, W. E. Hassebroek and Helen M. Bullock, Appellees.

No. 7505.

United States Court of Appeals Tenth Circuit.

Oct. 21, 1964.

James R. Eagleton, Tulsa, Okl. (Elton B. Hunt, W. L. Eagleton, Tulsa, Okl., and F. G. Armstrong, St. Louis, Mo., with him on brief), for appellants.

Clee Fitzgerald, of Fitzgerald & Houston, Stillwater, Okl., for appellees.

Before MURRAH, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

MURRAH, Chief Judge.

This appeal involves the ownership of 33 Government Savings Bonds issued to "Phillip Rudy or Florence Rudy", husband and wife, as joint tenants with right of survivorship. The first question presented is whether the bonds passed to the surviving wife's estate under the provisions in the bonds and applicable Treasury Regulations,[1] or to the husband's heirs under his will as ordered and decreed by the probate court having jurisdiction of his estate. The trial Court held that title passed under the terms of the bonds, and we agree.

The undisputed operative facts are that the deceased husband devised a life es-

1. 31 C.F.R., § 315.61.

tate in his personal property to his wife with the remainder over to his three children. His wife and one of his children by a former marriage were named as joint Executrixes, and while all bonds, including those held in joint ownership, were not specifically listed, their total value was included in the gross inventory of his estate. Their value was also included in the estate tax return and in the final account. In its decree of final account and distribution the probate court specifically found that the decedent husband was the owner of "Six United States E Bonds jointly issued to the decedent and Florence G. Rudy the widow in the amount of $29,970.00." [2] It then ordered that "all the personal property of the said decedent held either separately by the decedent or jointly with Florence G. Rudy" be distributed to her. During the remainder of her life, the wife retained possession of all the personal property including all the bonds, and consumed six of the joint ownership bonds, leaving at her death the 33 bonds which are the subject of this litigation. She died intestate and all the assets of her estate including the subject bonds were distributed to appellees as the collateral heirs of her estate. The remaindermen of Phillip's estate thereupon brought this suit against Florence's legatees, to recover possession or value of the jointly owned bonds.

■ It cannot be doubted that upon the death of Phillip, his co-owner wife immediately became vested with the sole and absolute ownership of the jointly owned bonds. Her ownership is derived from the transcendent provisions of the bonds and applicable Treasury Regulations. And, this is so even though State law may decree otherwise. See: Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180; and Barton v. Hooker, Okl., 283 P.2d 514, Annot., 37 A.L.R.2d 1222. The appellant-remaindermen do not seem to contend otherwise. They do contend that when Florence as Co-Executrix listed the bonds and their total

value in the inventory of Phillip's estate for administration, she thereupon elected to take title to the jointly owned bonds under his will. And, the Oklahoma County Court having administered the estate and by its decree distributed the bonds to her as a life tenant under Phillip's will, her privies are now estopped to question the jurisdiction of that court to distribute the property under the will.

■ Since the bonds were never a part of the decedent-husband's estate, the probate court did not acquire jurisdiction of them and the purported exercise of jurisdiction was a nullity. See: Jent v. Brown, Okl., 280 P.2d 1005. Consequently, no one could acquire any property rights in the jointly owned bonds under color of the Oklahoma County Court's decree.

■■ It is the law in Oklahoma as elsewhere that a person who accepts the benefits of a judgment, decree or judicial order is estopped to attack it. See: Ballinger, et al. v. Starkeys, et al., Okl., 360 P.2d 515. And, it may well be that this rule of estoppel would apply to the surviving wife and her privies if it were affirmatively shown that she benefited materially from the judicial decree. But, as the trial Court found, there is no evidence that the surviving wife "gained any benefit or advantage by the terms of the final decree * * * regarding the said 33 bonds or that the [appellants] were mislead by the terms to their disadvantage." Since the bonds belonged to her solely and absolutely, she could have derived no benefit whatsoever by including them in the estate.

Finally, the remaindermen assert and rely upon a "family plan" or agreement whereby it was purportedly agreed between the husband and wife that the bonds would pass under the provisions of Phillip's will. Two family friends testified that the wife had discussed the bonds in question and had told them that although she could cash them as her own, she and Phillip had agreed to in—

---

2. This finding is obviously inaccurate in that the total value of all bonds purchased by Phillip Rudy, including the joint ownership bonds, was $29,970.00.

clude them in his estate and, in accordance with this agreement, she intended to do so. It is suggested that the inclusion of the bonds in the inventory of Phillip's estate to be administered under his will is irrefutible evidence of the existence of the agreement and her intention to abide it.

■■ If the so-called "family plan" is proven in fact, the law will recognize it and equity would certainly enforce it. See: Silverman v. McGinnis, 3 Cir., 259 F.2d 731; and Bell v. Killian, 266 Ala. 12, 93 So.2d 769. But, there is no written evidence indicating or referring to a "family plan" or agreement with respect to the bonds held in joint ownership. Evidence of the oral agreement is in direct conflict with the agreement written into the face of the bonds, and this agreement with its overriding legal consequences will not lightly be set aside by casual conversation such as the testimony relied upon in this case. See: Pancoast v. Eldridge, 134 Okl. 247, 273 P. 255; and Foster v. Barton, Okl., 365 P. 2d 714.

■ The trial Court did not think the evidence and circumstances sufficient to support the asserted family plan agreement. It believed and found that any conversations between Florence Rudy and her neighbor-witnesses fell short of establishing a contract and that the conversations alluded to as evidence of the family plan, if they did in fact occur, more logically referred to the six separately owned bonds and other personal property which was a part of Phillip's estate and properly includible as such. The trial Court further found that the value of the bonds was included in the inventory, final account and decree through "improper legal handling;" that it was not the intention of the surviving wife or her attorneys to include the 33 jointly owned bonds for administration under the terms of the will; and, that such bonds and the value thereof were properly placed in the gross estate for estate tax purposes, but were inadvert-

ently or improperly included in the final decree of the probate court. The findings of the trial Court in this respect are not clearly erroneous, and the judgment is affirmed.