ASSOCIATED CLASSROOM TEACHERS OF OKLAHOMA CITY, INC., Appellant,

v.

BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT NO. 89 OF OKLAHOMA COUNTY, Oklahoma, Pat Potts, Armond Start, Dene Brown, Floyd Donwerth, Paul English, Betty Hill, Freddye Williams, Individually and jointly as members of the Board of Education of Independent School District No. 89 of Oklahoma County, Oklahoma, Appellees,

and

Oklahoma City Federation of Teachers Local 2309, American Federation of Teachers, AFL-CIO, Appellees-Intervenors.

ASSOCIATION OF CLASSROOM TEACHERS OF OKLAHOMA CITY, INC., a non-profit corporation, Petitioner,

v.

INDEPENDENT SCHOOL DISTRICT NO. 89 OF OKLAHOMA COUNTY, Oklahoma, Pat Potts, Armond Start, Arthur Hill, Floyd Donwerth, Paul English, Betty Hill, Freddye Williams, in their official capacities as Members of the Board of Education of Independent School District No. 89 of Oklahoma County, Oklahoma, Respondents.

Nos. 50260, 51789.

Supreme Court of Oklahoma.

March 21, 1978.

Fagin, Hewett, Mathews & Fagin by Arnold D. Fagin and Ronald E. Stakem, Oklahoma City, for appellant.

Jernigan, Groves, Bleakley, Hood & Moorman by William P. Bleakley, Oklahoma City, for appellees Board of Education.

Kenneth R. Nance, Oklahoma City, for appellees AFL–CIO.

Fagin, Hewett, Mathews & Fagin by Arnold D. Fagin, Clifford A. Jones, Ronald E. Stakem, Oklahoma City, for petitioner.

Jernigan, Groves, Bleakley, Hood & Moorman by Eric J. Groves, William P. Bleakley, Judith Slayman Onken (Legal Intern), Oklahoma City, for respondents.

DAVISON, Justice:

In September, 1976, the Association of Classroom Teachers of Oklahoma City, Inc., a non-profit corporation, whom we shall refer to as ACT, brought an action for specific performance of collective bargaining contract, against the Board of Education of Independent School District No. 89 of Oklahoma County, which we shall refer to as School Board. The central issue in that suit was whether or not ACT was entitled to specific performance of particular terms in a collective bargaining contract between ACT and the School Board, which recognized ACT as the exclusive bargaining agent for the teachers in the School District. The collective bargaining agreement provided that ACT would have exclusive "organization rights", which included such rights as leave of absence rights granted to ACT's President, the use of the school mail system, and the furnishing of cost-free list of teachers twice a year. ACT sought injunctive relief, asking the Court to enjoin the School Board from extending such "organization rights" to the Oklahoma City Federation of Teachers, Local No. 2308, whom we shall refer to as AFT.

While the suit for injunctive relief was pending, AFT brought a separate action in the District Court, seeking a Writ of Mandamus to require the School Board to recognize AFT as the exclusive bargaining agent of all professional educators in the District. ACT was allowed to intervene in the suit initiated by AFT, and AFT was allowed to intervene in the suit initiated by ACT. The cases were consolidated by the District Court for trial.

After the cases were consolidated, and hearings were held, the trial court issued a memorandum decision and judgment. In that judgment, the trial court ruled that the provisions in the collective bargaining contract between ACT and the School Board, which granted ACT the exclusive rights set forth above, were unenforceable as against public policy.

The court then addressed the question of recognition of a bargaining agent by the School Board. The court first noted that both ACT and AFT claimed a right to be recognized under the provisions of 70 O.S. 1971 § 509.2, which provides:

"The local board of education shall recognize a professional organization that secures authorization signed by a majori-

ty of the professional educators designating said organization as their representative for negotiations. The members of the professional organization shall be professional educators employed by and serving in the district they propose to represent and no other person shall be authorized to represent the professional educators. The bargaining representatives of the professional organization shall be elected by a majority of the professional educators of the district they are to represent at an election called after proper notice is given to all the professional educators of the district. Any person who desires not to be represented by any organization, as provided for herein, may so state in writing to his board of education."

The court also noted that both bargaining agents had presented sufficient authorization cards to entitle them to recognition, the number of cards submitted by both groups together totaling over 3,000, despite the fact that there were only some 2,500 professional educators in the School District. Recognizing the obvious confusion caused by the present situation, the trial court, exercising its equitable powers, invalidated all authorization cards signed as of the date of the trial court's ruling, and prohibited the Board from accepting any signed authorization cards except as provided for by the procedure established by the trial court in its judgment. The court then went on to establish a procedure for presentment of authorization cards, similar to an election, in which each professional educator would, at a designated time and place, be presented with an authorization card, to be filled out and signed and then presented to the School Board—each teacher being permitted to prepare the card in secret.

Under this procedure, the Board was ordered to count the authorization cards and determine which organization had a majority of all "votes cast", and then recognize the organization receiving the majority. The court also ordered that such a procedure should be followed each year.

In establishing this procedure, the court noted that the provisions of 70 O.S.1971 § 509.2 requiring recognition of collective bargaining agents, do not provide guidelines for the securing of the authorization cards and fail to authorize any method of selecting the representative for negotiations, and that therefore it was necessary that the statute be implemented and expanded by a decree of the court.

After issuance of the court's memorandum decision and judgment in September of 1976, all three parties, ACT, AFT and the School Board, voluntarily following the procedure established by the trial court, using the Oklahoma County Election Board as an independent party to audit the authorization cards. None of the parties appealed from that portion of the trial court's order which established the procedure, similar to an election. Following the election-type procedure in 1976, ACT, receiving a majority of the votes cast, was recognized by the School Board as the bargaining representative of the educators for 1976–1977. A contract was accordingly entered into, and ACT did in fact represent the professional educators as their bargaining agent for that school year. In the Fall of 1977, the election-type procedure was again followed, at which time all three parties all participated voluntarily. As a result of that second election-type procedure, AFT, who received the majority of authorizations presented, was recognized as the bargaining agent for the school year 1977–1978.

As mentioned above, none of the parties involved appealed from the portion of the trial court's order, which established the election-type procedure. However, ACT did appeal from the court's ruling insofar as it determined that the exclusive rights provisions of the contract were contra to public policy. That appeal, Supreme Court Case No. 50,260, is now before this Court, as is an original action recently filed by ACT.

Shortly after, the School Board, following the second election-type procedure, recognized AFT as the bargaining agent for the school years 1977–1978, ACT filed an original action with this Court, Supreme Court

Case No. 51,789, in which it asks this Court to assume original jurisdiction and issue a writ of mandamus, requiring the School Board to recognize ACT as the exclusive bargaining agent for the School District. ACT's claim to recognition is based upon their having secured authorization cards prior to either of the election-type procedures, the cards which were invalidated by Judge Harris' order. The claim is also predicated upon this Court's removing an impediment to their recognition, namely the judgment of the trial court which prevents the School Board from accepting any authorization cards which are not secured through the election-type procedure ordered by the court. In asking this Court to hold that the School Board is not bound by the trial court's judgment, ACT argues that the trial court's judgment is *void*, and therefore is not entitled to be given effect.

This Court has by order consolidated both the appeal from the trial court's ruling as to the validity of the contract terms, and the original action in which ACT seeks a Writ of Mandamus. Both actions were consolidated under Supreme Court Case No. 51,-789.

We will first consider the original action brought by ACT, seeking a Writ of Mandamus. In order for ACT to be entitled to recognition by virtue of the authorization cards obtained prior to either election procedure, the judgment of the trial court must of necessity be *void*, as no appeal was taken from the portion of the judgment which (1) established the election-type procedure, and (2) invalidated all authorization cards submitted as of the date of the order. In short, unless void, the judgment would have become a final judgment binding on all parties involved.

In answer to ACT's petition for the issuance of a Writ of Mandamus, the School Board argues that ACT, under the doctrine of equitable estoppel, is precluded from attacking the validity of the judgment of the

trial court because ACT accepted the benefits of the judgment. In support of this proposition, the School Board cites *Ballinger v. Sarkeys*, Okl., 360 P.2d 515 (1961); *Skelly Oil Company v. District Court*, Okl., 401 P.2d 526 (1964), and *McKee v. Hassebroek*, 377 F.2d 310 (10th Cir. 1964).

In *Ballinger v. Sarkeys*, supra, this Court held that a plaintiff who brought suit to quiet title and, as an incident thereof, to cancel a sheriff's deed and a court's decree approving the deed, was estopped from denying the validity of the sheriff's sale, because he accepted the benefit of the sale— the proceeds.[1]

Likewise, in *Skelly Oil Company v. District Court*, supra, this Court held that a widow who receives and accepts an award from the State Industrial Court for the death of her husband is estopped to deny the validity of such an award, or any part thereof. In that case, the plaintiff widow, in bringing a common law action against her husband's employer, sought to deny the validity of the State Industrial Court's ruling, that her husband was acting within the scope of employment. In determining that issue, we stated:

> "The contention of the respondent herein is that the deceased was not an employee at the time of injury because he had stopped work for the day and was on his way home. This contention cannot be sustained. The acts of the widow in applying for and receiving an award for the death of the husband settles this question.

In 31 C.J.S. Estoppel, § 110(7) at page 577, the text reads:

> 'A person who accepts the benefits of a judgment, decree, or judicial order is estopped to deny the validity or propriety thereof, or of apart thereof, on any grounds, whether the invalidity results from want of jurisdiction of the person or of the subject matter of the suit; nor can he reject the burdensome consequences of it.' "

1. In the *Ballinger* case, the plaintiff grantor was the party who actually accepted the benefits of the sale and the court's order decreeing the sale proper. However, this court held that the plaintiff stood in the shoes of his grantor, and was therefore estopped from attacking the validity of the prior sale and adjudication.

Also see *Turner v. Kirkwood*, 168 Okl. 80, 31 P.2d 935 (1934), in which this Court stated in its syllabus:

"A party to a judgment who accepts the benefits thereof for a period of more than thirty years, is estopped in equity to question the validity thereof on the ground of want of jurisdiction of the court to render the same."

ACT, asserting that the doctrine of equitable estoppel is not applicable under the facts of the case before us, advances three arguments:

1. ACT asserts that under the law in this jurisdiction, it is permissible to attack the validity of a judgment, in spite of the fact that the party attacking the judgment has benefited from it.

2. A party may not be equitably estopped from attacking the validity of a judgment, when the party attacking the judgment *would have been otherwise entitled* to the benefits of the judgment. Arguing that it was legally entitled to recognition in 1976, whether or not it participated in and won the election procedure, ACT asserts that the doctrine of equitable estoppel is not applicable, and may not be used against them, since they were entitled to recognition by virtue of authorization cards signed prior to the initiation of the election procedure.

3. ACT argues that the doctrine of equitable estoppel may only be employed to estop one who has benefited from a transaction from denying the rights of others which arose from the transaction itself.

■ We will next consider the arguments raised by ACT in the order presented. In arguing that the Oklahoma law permits a party to attack the validity of a judgment, even though the party may have benefited from the judgment, ACT relies upon a 1936 case, *Naharkey v. Sand Springs Homes*, 177 Okl. 371, 59 P.2d 289. We find that case clearly distinguishable from the case before us. In that case, the guardian of a minor sought to attack the validity of a partition action in which a partition in kind had been decreed. The action was brought against a defendant who had purchased some of the land which had been partitioned and which was awarded to parties other than the minor plaintiff. A guardian ad litem had acquiesced to the partition action, and her guardian had accepted rents from the separate tract of land awarded to the minor plaintiff. The case was complicated by (1) the fact that an Act of the United States Congress was involved—that Act prohibited the alienation of full blood Creek land, (2) the fact that a minor's rights were involved, and (3) the action was brought by the minor's guardian, who was apparently a different person than the guardian ad litem who had acquiesced to the partition. Because of the complexity of the Federal law involved, and the sui generis nature of a partition action, we do not agree with ACT's contention that the *Naharkey* case, supra, stands for the proposition that in this jurisdiction, a party is free to attack the validity of a judgment or decree, despite the fact that the party has benefited by virtue of the decree or judgment. To the extent that the *Naharkey* case would appear to stand for such a proposition, we overrule it. In so ruling, we agree with the Tenth Circuit Court of Appeals' capsulation of the state of the law of equitable estoppel in Oklahoma:

"It is the law in Oklahoma as elsewhere that a person who accepts the benefits of a judgment, decree or judicial order is estopped to attack it." [*McKee v. Hassebroek*, 337 F.2d 310 at 312 (10th Cir. 1964)].

■ Having ruled that the doctrine of equitable estoppel prevents a party from attacking the validity of a judgment when the person has accepted the benefits of said judgment, we will next determine whether ACT accepted benefits by virtue of the trial court's ruling, to which ACT would not have been otherwise entitled.

ACT claims to have been entitled to recognition as the school bargaining agent for the school year 1976–1977 by virtue of the signed authorization cards obtained prior to either of the election-type procedures. Based upon this presumption, ACT asserts

that they received no benefit from the judgment, other than those benefits which they were otherwise entitled to; that is, entitled to by virtue of the priorly obtained authorization cards. We do not find ACT's argument convincing, for the following reasons. Benefits other than recognition arose in favor of ACT, as the result of the trial court's judgment. Among these benefits was the security which the judgment provided ACT—for the judgment insulated ACT against an attempt by AFT to seek recognition by virtue of signed authorization cards, which they had already obtained prior to the trial court's order. Additionally, ACT was not entitled to recognition, and thus even that benefit was one which ACT was not otherwise entitled to. ACT was not entitled to be recognized by virtue of the signed authorization cards obtained prior to the election proceedings for the following reason. Even assuming, for the sake of argument, that the trial court did not have the jurisdictional power to order the election-type procedure, the court clearly had the jurisdictional power to declare all authorization cards before it invalid. The court had jurisdiction over the parties and the subject matter—the validity of the cards being an integral part of the action brought by AFT seeking recognition. Whether the trial court made a mistake of law or of fact in declaring the cards invalid, is, at this point, immaterial, as no appeal was taken from that portion of the trial court's order. Accordingly, we hold that ACT, by virtue of the trial court's judgment and its participation in the election proceedings pursuant to that judgment, did accept benefits to which it was not otherwise entitled. This being the case, the doctrine of equitable estoppel is applicable, and may be asserted against ACT.

■ Lastly, we consider ACT's third contention that even if the doctrine of equitable estoppel may be employed to estop one from asserting the invalidity of a transaction, if they have benefited from it, the doctrine may be *used only to estop* the denial of rights of others which *arose from the transaction involved.* Having set forth this principle, ACT argues that the transaction involved was their participation in the 1976 election, and that their participation did not legitimately give rise to any corresponding right in the School Board to henceforth and forevermore expect that elections would be held annually without challenge. ACT's analysis is incomplete, for it fails to consider the rights of educators in the election-type procedure. The educators had a right, by virtue of the judgment and election procedure, to select their bargaining agent by signing authorization cards, without first revoking authorization cards which they had executed previously. ACT now seeks to deny that right, despite the fact that it voluntarily participated in the election under which such right was recognized. Thus, we are not persuaded by ACT's argument.

For the above stated reasons, we hold that the employment of the doctrine of equitable estoppel is applicable in the case before us, and that ACT is estopped from questioning the validity of the trial court's order, which established the annual election-type procedure.

■ We next consider the appeal perfected by ACT from the trial court's judgment insofar as it held that certain provisions in ACT's contract with the Oklahoma City School Board were invalid, as against public policy. As the contract, which the court interpreted in its judgment, is no longer in force and effect, and as the action was one seeking specific performance, we hold that the issues raised in ACT's appeal are now moot, and therefore, need not be considered on their merit.

As ACT's case for the issuance of a Writ of Mandamus was in part dependent upon the trial court's judgment being void, and as we have held that ACT is estopped from asserting the invalidity of that judgment, we refuse to issue the Writ of Mandamus requested. We also decline the consideration of the questions raised in the appeal perfected by ACT, as we have held them to be moot.

ORIGINAL JURISDICTION ASSUMED, WRIT OF MANDAMUS DENIED; AND

SEPARATE APPEAL FROM THE SAME CASE BELOW IS DEEMED MOOT.

All the Justices concur.